Thank you both. We will hear argument next in Naylor v. Valicenti, 20-4037. Thank you. Thank you. Thank you. Mr. Spadarico, you can proceed. May it please the Court. My name is Derrick Spadarico and I represent Vincent v. Valicenti. Thank you, Your Honor, for this matter. The district court was partially right and partially wrong, as often happens in the law. In this case, we believe the district court properly decided the issue that the closing question concerning arbitration was ambiguous as a matter of law, where we feel the district court went a bit astray was in expanding the analysis beyond that point. It was our point all along that once you determine that an arbitration clause in an agreement is ambiguous, that's when the analysis stops. So I'm curious. I don't think I saw in your brief any citation to our decision in Progressive, which held that that rule of construction under New York law for arbitration clauses is preempted by the FAA. I believe and I think it is cited in the brief. Okay. Okay. So how do you deal with that? Why are you making that argument if we said it doesn't apply? Well, I think in Progressive you held that in the absence of an express unequivocal agreement, parties will not be deemed to have chosen arbitration. Citing back to Armenian Industries, which was also cited in a matter of involvement. So I think we go back to what was in the agreement, back to the four corners of the agreement. Beyond that, we cite back to Payne, Weber, and most recently to Ursula from the New York Appellate Division. I'm sorry. Could you say – I'm sorry. Could you just repeat to me what you think Progressive – our decision in Progressive stands for? I believe it has language in it that says that the parties will not be held to have chosen arbitration in the absence of an express unequivocal agreement to that fact. And that cites back to Armenian Industries, which was quoting acting superintendent of schools of Liverpool. So we go back to a consistency within the law that indicates that any agreement to arbitrate must be clear and unambiguous, which does not exist here. The Court found it to be ambiguous and then proceeded with a parole evidence hearing over our strenuous objection. So you – can I just go back? I'm pulling up the page in Progressive. And you're correct. It quotes Marlene. It says what New York law provides. And then two sentences later it says, however, New York law requires that non-arbitration agreements be proven only by a mere preponderance of the evidence. And then because PERI prohibits such discriminatory treatment of arbitration agreements, the rule set forth in Marlene Industries is preempted. So yeah, we quoted Marlene. Right. And then we said it does not apply. It said it's preempted. Two sentences later. I understand that, Judge. So I guess we said the opposite of what I think you're arguing to us. No, I think – I still think it's consistent, Judge. It goes back to the four corners of the agreement. And if we even go back to Master Buono from the Supreme Court, okay, it still says an agreement to arbitrate has to be within the four corners of the agreement. It has to be explicit. It has to be voluntary. Because once you – It has to be explicit? Ambiguous. What has to be in writing under Rossello, yes, that's the language we use for Rossello. Clear, explicit, unequivocal. It must not depend on implication or subtlety. And that's the 2021 out of the appellate division. Right, right, right. This is what we said when Progressive is preempted. We said you can't treat arbitration contracts differently from how we interpret other contracts. We understand New York's got that law. If you were in New York's Supreme Court, this would be a great argument. But Progressive held that that is preempted as a matter of federal law under the FAA. And I guess that's why I'm a little baffled about why you keep coming back to something that we said specifically is preempted. So let's explore that, Judge. Okay? If you want to move on to the parole evidence here, let's go through what exactly happened in the parole evidence. The main witness was Judge Stanger, the mediator-turned-arbitrator. When he was questioned about what the parties knew about the arbitration, first he didn't recall. Second, after that, his memory was refreshed. And then he did have a moment of clarity where he did recall speaking about arbitration with the parties. After that, on cross-examination, we talked about the details of what was discussed. Again, he admitted under oath there were no details discussed. He doesn't recall exactly what was discussed. So, really, there was no agreement. When we go back to the arbitration provision itself, when a client is directing himself to the right to use the court and the procedural and due process protections that are provided within the court, it's got to be an explicit, unequivocal decision to do so. And I don't believe that exists here, Judge. I guess I still have trouble. You keep citing to this provision the rule of New York law that we've said is preemptive. It does not apply. So, I mean, it's sort of a difficulty, I think. I still believe, Judge, I can reconcile the two. Even though arguably it is preemptive under progressive, it still has to be an agreement among the parties. And even in the oral evidence here, it shows that there was really no agreement among the parties as to what this clause meant. And we have the decision from Judge Sergusa. How do we review the judge's finding, which I take to be a factual finding, of what was said and what was not said to the parties? Is that a factual finding or legal? It's a factual finding. So it's a factual finding. Are we reviewing only for clear error as to whether those words were actually said? No, I think that's already been decided from Judge Sergusa's analysis. So you're not disputing his finding about who said what to whom? We are absolutely disputing that finding. Okay, so that's a factual finding. And my question is, is that not reviewable only for clear error as to who said what to whom? I would agree with the judge. And you're arguing that that is clear error, that those words were not said to people, that when the judge found he credited certain testimony of the arbitrator, that he was not allowed to credit that testimony? No, I believe that the testimony was quite clear that the arbitrator did not remember talking about arbitration with the parties. He used the word. At first he didn't recall. But then he did recall, right? After his recollection was refreshed and after that cross-examination, it was clear that his depth of explanation, let's say, was far less than what he had originally intended. But there was some evidentiary basis for the district court's finding. Would you agree with that? I would disagree with that. I think that there was testimony, and the testimony was evidentiary. Why isn't testimony some evidentiary? Why doesn't that qualify as some evidentiary basis? Well, it's some evidentiary basis, but I think it's more evidence of what was not discussed rather than what was actually discussed. Well, thank you very much. Thank you. You actually have two more minutes, but you also have rebuttal, so we'll hear from Mr. Unger. Good morning. May it please the Court? I think you look kind of unwell to me. It's a clearly erroneous standard. Excuse me, I would remind you, I am absolutely not suggesting it, but I would remind you that if you wanted to, you could remove your mask. Thank you. I'm just trying to be polite in my answer. Well, I'm just worried that if you get sick, it'll be my fault. You have judicial immunity. Your choice. Your choice. I don't know about that. Your choice. Thank you, Your Honor. Your Honor, the panel clearly, through the questioning, got the standards correct. It's clearly erroneous. I want to point out to the Court that the other two people who were parties to the mediation that resulted in the settlement that was drafted by the mediator who became the arbitrator were present in that hearing. The only testimony that went into evidence was three people. Mr. Naylor, Justice Alicente, and Retired Justice Stanton. All three testified as to the meaning of that clause. All three testified that it was explained to them or was explained to others what the slash meant. And what the slash meant was that the parties, if there was a disagreement as to the settlement, the parties would continue to go to mediation. And if that mediation was unsuccessful, the parties would arbitrate before Judge Stanton. And that was what Judge Seragusa found was an ambiguity. There was no evidence put forth about certification. Nothing. Mr. Spadarico didn't testify. His client didn't testify. The only evidence that was put forth before Judge Seragusa kind of gave them an opportunity to be heard, applied the right standard, and said that if it was an unmeaning alliance, that he would not enforce consolidation. And after engaging in this, in this fact-hearing, and hearing testimony from three people, two of which put Mr. Spadarico in the room, in my room, where this clause was discussed. And there's no, there's no, the clearly erroneous standard has not been met. The parties agreed to arbitrate, and they did arbitrate. And what I'd like to also point out to you, even though it's in our paper, Mr. Spadarico did send a letter to the arbitrator, which was considered by the arbitrator, when he rendered his decision. So there was participation. Yes, Mr. Spadarico and his client did not appear in Rochester for the hearing, but Mr. Spadarico did submit a letter, which was considered by the arbitrator. As in the second arguments raised, which were not raised below, which are raised in the first time, the agreement was drafted by the mediator. The mediator drafted the agreement, so it should not be construed against my client. My client didn't draft the agreement. This was a time effort. At the conclusion of a very lengthy, long mediation, later in the afternoon, almost evening, the arbitrator, the mediator, went into his office and typed it out and went over with us, and that was raised below. Would you just address briefly the issue of progressive and the interaction between New York law and federal law, the FAA? I think, Your Honor, I think the panel nailed the issue correctly. Well, it was a series of questions, so would you address that? Sorry. I didn't see progressive rates in any of the briefs, Your Honor. I didn't see that in any of the briefs. But I think it's a contract here. Contracts are interpreted by state law. The Second Circuit has said that in other cases. And the court said that there was an ambiguity in the New York law. Did Dr. McEwish determine what the ambiguity was? Determined whether the ambiguity was an agreement to arbitrate? And applied the right standard. Applied the standard required to have an arbitration. Okay. Anything further? Nothing. Thank you. Mr. Spadavico? Very briefly, I would refer back to the hearing itself. There are some contractual matters that merit a parole evidence hearing. I do not believe, and I have not seen the case, that an arbitration clause requires a parole evidence hearing. Nor do I think it's proper practice to divest the litigant of his right to litigate and to afford himself protections that he finds within the court. We're arguing over what a slash meant in an ambiguous decision between mediate slash arbitrate it. With the appellate division, again, it said it has to be clear, explicit, unambiguous, and not have that implication or subtlety. And the implication is what arose out of the parole evidence hearing. It got worse when it should have been concluded, respectively. We ask that the...